IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MELODY M. BUTCHER,                    §
                 PLAINTIFF,           §
                                      §
VS.                                   § CIVIL ACTION NO. 4:04-CV-250-Y
                                      §
JO ANNE B. BARNHART,                  §
COMMISSIONER OF SOCIAL SECURITY,      §
        DEFENDANT.                    §

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

Plaintiff Melody M. Butcher brings this action pursuant to Section 405(g) of the Social

Security Act, Title 42 of the United States Code, for judicial review of a final decision of the

Commissioner of Social Security denying her claim for disability insurance benefits under Title II

of the Social Security Act.  Butcher applied for disability benefits on April 22, 2002, alleging she

has been disabled since May 13, 1999.  (Tr. 15, 48).  She meets the insured status requirements

through 2007.  (Tr. 194).

The Social Security Administration denied Butcher's application for benefits both initially

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 1**

and on reconsideration. Butcher requested a hearing before an administrative law judge (the "ALJ"), and ALJ William Helsper held a hearing on July 30, 2003 in Fort Worth, Texas. (Tr. 216-39). Thibodeau was assisted by a non-attorney representative. On August 27, 2003, the ALJ issued a decision that Butcher was not disabled because she retained the residual functional capacity (RFC) for a modified range of sedentary work activity during the period under consideration. (Tr. 15-24). The Appeals Council denied Butcher's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work,

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 2**

considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.  If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995);  *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve.  *Masterson*, 309 F.3d at 272.  The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000);  *Hollis*, 837 F.2d at 1383.

**<u>Findings, Conclusions and Recommendation of</u>**
**<u>the United States Magistrate Judge</u>–Page 3**

C.     ISSUE

Whether the ALJ gave appropriate weight to opinions from a treating source.

D.     ADMINISTRATIVE RECORD

1.     Medical History

Butcher worked as a flight attendant for twenty-three years.  She initially injured her back while working in March 1995.  She returned to work, but re-injured her back in May 1999 while trying to close an airplane coat closet that had jammed.

Butcher first saw Manish Suthar, M.D., at the Texas Back Institute.  (Tr. 89-93).  Suthar diagnosed S1 radiculitis[1] and prescribed anti-inflammatory medication and physical therapy.  Magnetic resonance imaging (an MRI) in June 1999 showed a herniated disc at L5-S1 that impinged on the nerve root.   The film also showed degenerative disc disease at L4-L5 and L5-S1.  (Tr. 93).

On October 6, 1999, Butcher sought treatment from neurosurgeon Gary Hutchinson, MD., because she continued to have back pain and pain in her right leg that was unimproved with conservative treatment.   (Tr. 126).    Hutchinson ordered a myelogram and post-myelogram computed tomography (CT) study that confirmed a right-sided disc herniation at L5-S1 with compression of the S1 nerve root.  Hutchinson recommended surgery.  (Tr. 124).

Butcher saw David Barnett, M.D., in January 2000 to obtain a second opinion as required by her worker's compensation insurance.  (Tr. 115).  Barnett reviewed the myelogram and CT results, and also performed a physical examination.  Barnett concurred with Hutchinson's surgical

---

[1] Radiculitis is an inflammation of the root of a spinal nerve.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1511 (29th ed. 2000).

recommendation, (Tr. 115-16), and upon being given the choice, Butcher selected Barnett to perform the surgery.  (Tr. 122).

Barnett performed a right L5-S1 microdiskectomy[2] and nerve root decompression on April 17, 2000.  (Tr. 98).  Butcher was discharged from the hospital the following day.  (Tr. 95).  She initially reported improvement and was approved to return to work, but within six months after surgery, she complained of a marked recurrence of radicular symptoms in her right leg.  (Tr. 110-13).

Barnett ordered a new MRI scan in October 2000.  The MRI showed a possible calcified disc protrusion at L4-L5 consistent with right-sided L5 radiculopathy;[3] L4-L5 disc dessication and loss of disc space height at this level; and granulation tissue at the L5-S1 surgical site.  (Tr. 108-09). Barnett reviewed the studies and noted that there was no recurrent disc herniation and no evidence of significant stenosis or neural compression.  He advised Butcher that he had no additional treatment to recommend.  (Tr. 106).  On May 15, 2001, Hutchinson also reviewed the new MRI films and Barnett's treatment notes.  He opined that Butcher had achieved true maximum medical improvement with a ten percent permanent partial impairment rating.  (Tr. 119-20).

On July 2, 2002, Butcher underwent a consultative examination with Alberto Flores, M.D. (Tr. 129).  She reported persistent low back pain with tingling in her right leg.  Flores performed a physical examination and observed a  reduced range of motion in Butcher's lumbar spine.  (Tr.

---

[2]  Microdiskectomy is a debulking of the herniated disc using an operating micropscope or loupe for magnification.  *Id.* at 1110.  Debulking refers to the removal of a major portion of the material that composes a lesion.  *Id.* at 461.

[3]  Radiculopathy refers to disease of the nerve roots.  *Id.* at 1511.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 5

130).  Butcher was able to stand, sit, stand, reach, lift and carry without difficulty.  (Tr. 130).  Flores diagnosed chronic back pain, status post microdiskectomy.

Butcher saw Gregg Diamond, M.D., on July 24, 2002.[4]   (Tr. 165).  She complained of intermittent moderate to severe pain located predominately in her right buttock and right calf.  Standing, bending activities, and sneezing aggravated her pain.  Walking, manipulation, pain pills, and Advil helped to reduce the pain.  (Tr. 165).  Diamond performed an EMG study, which confirmed right-sided L4 and L5 radicular irritation and acute denervation.[5] (Tr. 167).  He ordered a new MRI study to investigate whether scar tissue might be the cause of Butcher's symptoms.  Insurance approval was delayed, but the MRI was ultimately approved and was performed on January 29, 2003.  The MRI showed mild epidural scar formation along the right S1 nerve root; severe degenerative disc disease, facet arthropathy,[6] and focal disc herniation at L4-L5; and severe degenerative disc disease at L5-S1.  (Tr. 154-55).

After reviewing the new studies, Diamond diagnosed spinal stenosis, an L4-L5 disc abnormality, severe degenerative spine disease at L5-S1, and ongoing acute radiculopathy in the L4 and L5 nerve root patterns.  (Tr. 148). Diamond recommended that Butcher see anesthesiologist Renaud Rodrigue, M.D., for evaluation and possible epidural lysis or epidural steroid injections.

---

[4]  The ALJ noted that Butcher went a lengthy period of time, from November 2000 to May 2001, without evidence of treatment.  (Tr. 20).  And after visiting with Hutchinson in May 2001, Butcher had no documented treatment until April 2002 when she reported that she had established a treating relationship with physician Gregg Diamond.  (Tr. 20).  The first treatment notes from Diamond, however, are dated July 2002.

[5]  Denervation is the denial of a nerve supply.  DORLAND'S at 472.

[6]  Arthropathy refers to any joint disease.  *Id.* at 152.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 6

(Tr. 148).  Diamond expected a short program of therapy, and anticipated that Butcher would be released for work in four to six weeks.  (Tr. 147, 148).

Butcher was evaluated at Rodrigue's office on April 8, 2003.   She complained of constant pain in the right side of her low back with a tingling sensation radiating into her right leg. (Tr. 176). She reported a recent and significant increase in her pain that had not been alleviated by physical therapy.  (Tr. 181).  On examination, Butcher was tender in her low back and sacroiliac joint, but range of motion was normal throughout.  Motor, reflex, and sensory examinations also yielded normal results.  (Tr. 176, 181-82).

Rodrigue performed an epidurogram[7] study on April 22, 2003 and administered a lumbar epidural steroid injection with a reported 25% improvement in Butcher's pain level.  (Tr. 174). During a follow-up visit on May 1, 2003, Butcher reported a measurable reduction in pain, but also complained of a gradual return of discomfort and requested additional injections.  (Tr. 174). Rodrigue agreed that additional injections would be beneficial.

Butcher saw Diamond again on May 5, 2003.  She had undergone epidural lysis of adhesions with Rodrigue and experienced a decrease in her back pain, but no improvement in her radicular symptoms.  (Tr. 172).  Butcher demonstrated excellent range of motion, although she complained of pain at the end range of testing.  (Tr. 172).  Because Rodrigue advised that repeating the procedure would not be helpful, Diamond planned to proceed with a functional capacity evaluation and the assessment of permanent work restrictions.  (Tr. 172).

---

[7] Epidurography is the radiography of the spine after a radiopaque medium has been injected into the epidural space.  *Id.* at 607.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 7**

Butcher underwent a functional capacity evaluation with occupational therapist John Durkin in May 2003.  (Tr. 191).  Durkin reported that Butcher gave maximum, consistent effort during testing.  Muscle strength and range of motion testing was within normal limits, but Butcher exhibited pain behaviors consistent with her diagnosis.  Areas in which she had significant ability included good hand coordination, pushing/pulling 300 pounds (on wheels), crawling, kneeling, crouching, squatting, walking, standing, and sitting.  Areas in which she demonstrated significant defects included lifting twenty-five pounds (from floor to waist or overhead), two-handed carrying of a thirty-five pound weight, and repeated flexion of the trunk in a standing position.  (Tr. 192).  Durkin found that Butcher's current capabilities were incompatible with the duties of a flight attendant.  (Tr. 192).

Diamond completed a written physical capacity evaluation on June 30, 2003.  He opined that Butcher could sit for a total of four hours and stand or walk for a total of one hour during an eight-hour workday.  (Tr. 189).  Diamond also found that Butcher needed the opportunity to sit or stand at will during the day.  No impairments were noted in Butcher's ability to use her upper extremities. Diamond opined that Butcher could lift up to twenty pounds occasionally.  He also indicated that she could occasionally climb, balance, and reach above shoulder level, but should never stoop, kneel, crouch, or crawl.  (Tr. 190).  He assessed her pain level as moderate.  The evaluation form defined moderate pain as a significant handicap in the ability to sustain attention and concentration that would eliminate skilled work tasks.  (Tr. 190).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 8

2.      Administrative Hearing

Butcher was fifty years old at the time of the hearing.  She testified that she had attended one and a half years of college, and began her career as a flight attendant in 1976.  (Tr. 219).  She tried conservative treatment measures after injuring her back in 1999, but physical therapy only increased her pain.  The surgery helped for a month or two, but the tingling and pain returned when she tried to resume normal activities.  (Tr. 221).   Butcher testified that Diamond, her current physician, was trying to obtain insurance approval for a new form of physical therapy that focused on releasing the affected nerve.  (Tr. 223).  None of her physicians had recommended additional surgery.

Butcher testified that she spent most of the day watching television, but she did some laundry and grocery shopping because she lived alone.   She had a maid service that did the heavier cleaning. Butcher took Advil and Vicodin for pain, but found that Vicodin made her sleepy and did not help the pain.  (Tr. 225).   She had also tried nerve blocks and injections, which were discontinued because they had not helped her.  (Tr. 228).  She described the pain as a constant tinging and burn that radiated into her right leg.  Standing or sitting for too long caused a stabbing pain.  (Tr. 224-26).

Butcher testified that she had good days and bad days. She estimated that she could stand for about twenty minutes and walk for twenty or twenty-five minutes.  She could also sit for twenty or twenty-five minutes before needing to change positions.  (Tr. 228-29).  Butcher testified that she could lift ten or fifteen pounds, but any heavier weight caused too much pain.   Butcher estimated that she spent about three hours a day reclining because a reclining position relieved the pressure on her back.  (Tr. 230).

Butcher testified that she had good days and bad days.  She estimated that she could stand Vocational expert Carol Bennett testified at the administrative hearing.  Bennett classified

the job of flight attendant as semi-skilled work requiring medium exertion.  (Tr. 234-35).  The ALJ

asked Bennett to consider an individual of Butcher's age, education and work history who was

limited to sedentary work with the ability to occasionally change positions from sitting to standing.

Bennett testified that such a person would have some basic customer service and communication

skills that would transfer to work as a telephone salesperson, which was a sedentary job with 4,500

jobs in Texas and 150,000 such jobs available nationally.  (Tr. 235).

Bennett conceded that an individual who missed one or two days of work each week would

be unable to maintain competitive employment.  (Tr. 236).  A person who could sit for no more than

four hours and stand or walk for one hour per day also did not qualify for competitive employment.

(Tr. 236-37).  Bennett testified that a telephone sales job would generally allow a person to stand

while performing the work, although sitting might be necessary at times to record information.  (Tr.

237).

3.    ALJ Decision

The ALJ found that Butcher had not engaged in substantial gainful activity since her alleged

onset date and had a severe back impairment; however, the ALJ found that Butcher's condition did

not meet or equal the severity of any listed impairment.  (Tr. 16-17).  The ALJ then considered

whether Butcher was capable of any level of work activity during the period any question.

After reviewing the medical evidence, the ALJ concluded that Butcher's residual functional

capacity had fluctuated over the years.  (Tr .21).  He determined that the medical consensus through

at least April 2002 was that Butcher retained the capability for a modified range of medium work

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 10**

activity.[8]  (Tr. 20-21).  The ALJ found that Butcher thereafter was restricted to sedentary work with the option to sit or stand at will.[9]  (Tr. 21).  Based on the vocational expert's testimony, the ALJ found that Butcher was capable of making a successful adjustment to other work existing in the national economy and was therefore not disabled.  (Tr. 22).

D.   DISCUSSION

Butcher contends that the ALJ erred in rejecting Diamond's opinions about her sitting and standing capabilities.  Butcher complains that Diamond is the only examining medical source to render opinions about her abilities, yet the ALJ effectively gave Diamond's assessment of her sitting and standing tolerances no weight at all.  Butcher requests a remand so that her residual functional capacity (RFC) on and after July 24, 2002 (which was her first recorded treatment date with Diamond) can be reassessed.  (Plf. Brief at 18).

When a treating physician's opinion is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record, it is entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

---

[8] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds.  20 C.F.R. § 404.1567(c).

[9] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  20 C.F.R. § 404.1567(a).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be completely rejected. In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p. An ALJ may not arbitrarily reject uncontroverted medical opinion evidence. *Strickland v. Harris,* 615 F.2d 1103, 1110 (5th Cir.1980). But the determination of disability always remains the province of the ALJ. *See id.* § 404.1527(e).

The ALJ acknowledged that Diamond's functional capacity evaluation indicated that Butcher was unable to work on a sustained full-time basis, but the ALJ provided the following reasons for disagreeing with Diamond on this point:

> He indicated she was capable of sitting for a maximum of only four hours and of standing for a maximum of one hour. This opinion appears to be based on the MRI report dated January 29, 2003 and an EMG report dated July 24, 2002. Yet, in a report dated March 21, 2003 he indicated he intended to return the claimant to full duty within four to six weeks. At the time of this report Dr. Diamond was in possession of both the MRI and EMG results. Additionally, the claimant reported to Dr. Rodrigue there had been a measurable reduction in pain following the last injection May 1, 2003. The pain was gradually returning and Dr. Rodrigue was addressing this. Dr. Diamond, in the functional capacity evaluation report, also felt the claimant had moderate restrictions as a result of pain which would constitute a significant handicap with sustained attention and concentration and would eliminate skilled tasks. This again conflicts with the treatment notes of Dr. Rodrigue and the claimant's self report. The undersigned further notes the claimant was referred by Dr. Diamond to Dr. Rodrigue, which is indicative of confidence in the opinion and skill of Dr. Rodrigue. Therefore, the undersigned affords the opinion of Dr. Diamond significant weight with regard to the claimant's ability to lift and carry and push and pull but discounts the opinion offered with regard to her ability to sit and stand as well as attend and concentrate. The claimant was referred to Dr. Rodrigue for pain management by Dr. Diamond, therefore Dr. Rodrigue is considered by the undersigned the preferred source for evaluating the claimant's limitations resulting from pain. Dr. Rodrigue's treatment notes did not indicate that the claimant's pain

was unmanageable.  Quite the converse is supported by his treatment notes. (Tr. 20-21).   Butcher contends that the ALJ's explanation does not constitute good cause for rejecting Diamond's restrictions on Butcher's ability to sit, stand and walk.

More specifically, Butcher complains that the ALJ would have assigned controlling weight to Diamond's opinions if he had considered the factors outlined in Section 404.1527(d) of the administrative regulations.  Before rejecting a treating source opinion, the ALJ is directed to consider a litany of factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization.  *See* 20 C.F.R. §404.1527; *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).  *See also* SOCIAL SECURITY RULING 96-2p, 96-5p.

The ALJ did not reject Diamond's assessment in its entirety, but only discounted those portions of the assessment that he found were otherwise inconsistent with the record–including firsthand reports from another treating source.  Citing Section 404.1527, the ALJ also stated that he had considered all of the medical opinions about the severity of Butcher's impairment.  (Tr. 23). Moreover, the ALJ addressed the requisite factors in substance throughout his written decision and in his identification of the reasons he chose to discount some of Diamond's opinions.

Butcher disagrees with the ALJ's observation that Diamond prepared the evaluation based on the same studies available in March 2003 when Diamond indicated that he intended to return Butcher to full duty within a few weeks. Butcher asserts that lofty goals and optimism should not be penalized.  The ALJ's decision as a whole does not suggest that the ALJ  was penalizing Diamond for being an optimist about his patient's progress, but reflects that the ALJ was concerned

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 13**

about the divergence between Diamond's expectations about his patient in March 2003 and his assessment six months later based on the same diagnostic tools and findings.

Butcher contends that Diamond actually had additional findings to support his later assessment, particularly the functional capacity evaluation performed by occupational therapist John Durkin in May 2003.  She criticizes the ALJ for failing to include Durkin's report in his discussion of the medical record.

The ALJ provided an adequate, if not comprehensive, discussion of Butcher's treatment history, and despite his failure to specifically mention Durkin's findings, the ALJ arrived at the same conclusion: Butcher could not return to her previous work as a flight attendant.  Moreover, Durkin does not include sitting, walking or standing in his list of Butcher's areas of significant deficiency, nor does  Durkin's report purport to determine Butcher's specific limitations with respect to her walking, standing or sitting tolerances. (Tr. 192).

Butcher also asserts that the ALJ erred in relying on Rodrigue's reports that indicated that Butcher's pain was manageable with treatment.[10]  Butcher notes that, unlike Diamond, Rodrigue offered no specific opinions about Butcher's ability to perform work-related activities, and she criticizes the ALJ for equating Rodrigue's reports of manageable pain with the ability to work on a sustained basis. She contends that the ALJ's decision to elevate Rodrigue's observations over Diamond's findings has no support in the record and is not compatible with the regulations.

---

[10] Butcher initially challenged the ALJ's reliance on her statements to Rodrigue that her pain had improved notwithstanding her qualification that the pain was already returning just days after the injection was administered. In her reply brief, Butcher agrees with the Commissioner that the ALJ was citing her reported reduction in pain as grounds for rejecting Diamond's opinion that Butcher had a limited ability for sustained attention and concentration. Butcher does not challenge the ALJ's rejection of Diamond's opinions about her attention and concentration.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 14

The ALJ found that Rodrigue's records deserved weight because Diamond had enough confidence in Rodrigue as a pain management specialist to refer patients to him.  Although Butcher does not agree with this reasoning, she has not demonstrated that the ALJ had no basis for making such an assumption or identifying Rodrigue as a specialist in matters of back pain.   The ALJ was persuaded that Rodrigue's reports contradicted the limitations that Diamond imposed.  (Tr. 20-21). Pain in particular is a disabling condition only when constant, unremitting and wholly unresponsive to therapeutic treatment.  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).

Butcher's assertion that Rodrigue only treated her on three occasions during a one-month period, while Diamond saw her on at least seven occasions over the course of a year likewise does not warrant disturbing the ALJ's decision.  Both physicians are treating sources whose findings were considered by the ALJ in his evaluation of Butcher's disability claim, and the credence to be given those opinions is the province of the ALJ.   *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).

The reasons outlined in the ALJ's decision reflect careful consideration of the record and constitute good cause for not adopting Diamond's opinions about Butcher's ability to sit, stand and walk during a standard workday.  Butcher has not demonstrated that the Commissioner's decision is unsupported by substantial evidence or a product of legal error.

<u>RECOMMENDATION</u>

It is recommended that the decision of the Commissioner be affirmed.

<u>**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**</u>–Page 15

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED</u>
<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION</u>
<u>AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until October 5, 2005.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until October 5, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

**<u>Findings, Conclusions and Recommendation of</u>**
**<u>the United States Magistrate Judge</u>–Page 16**

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED SEPTEMBER 14, 2005.


   /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE